## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In Re: )<br>)<br>DAVID PAZ, )<br>)<br>) | Case No. 305-06767<br>Chapter 7<br>Honorable George C. Paine, II |
| JEANNE BURTON GREGORY, TRUSTEE )<br>    Plaintiff )<br>v. )<br>)<br>MORTGAGE LENDER NETWORK, USA )<br>    Defendant. ) | Adv. No. 306-0056A |

_____

## *MEMORANDUM*
_____

This matter is before the court on the Chapter 7 Trustee's adversary complaint seeking to set aside the lien of Mortgage Lender Network, USA ("MLN") as a preference pursuant to 11 U.S.C. § 547(b). MLN contends that the perfection of its security interest was a contemporaneous exchange as defined by 11 U.S.C. § 547(c)(1) and (e)(2). The court finds, based on its earlier ruling in ***Waldschmidt v. Countrywide Home Loans (In re Watters)***, *Adv. Proc. No. 05-0797A, Docket No. 38 (July 14, 2006),* that a preferential transfer did occur and that the trustee may avoid MLN's security interest. The following constitutes the court's findings of fact and conclusions of law.

> The relevant facts were stipulated by the parties:
>
> 1. This is an adversary proceeding brought by the Trustee, as Plaintiff, pursuant to Bankruptcy Rule 7001(1) and § 544 of Title 11, United States Code (hereinafter referred to as "Code"). This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 157 and § 1334 in that this is a core proceeding arising under Title 11 of the United States Code or arising in or related to a case under Title 11 of the United States Code.

2. On June 6, 2005, a petition for relief under Chapter 7 of the Code was filed in this Court.

3. Pursuant to Notice of Appointment of Trustee filed on June 6, 2005, Jeanne Burton Gregory was appointed Trustee in this case.

4. The Debtor listed on Schedule A of his bankruptcy petition an interest in a house and lot located at 8105 Stacy Square Court, Nashville, TN ("the Property"). The Debtor also listed on Schedule D of his petition a debt pursuant to a refinance with Mortgage Lender Network USA ("MLN") on the Property in the amount of $88,500.00.

5. The Debtor was the owner of the Property prior to March 23, 2005, and at all times relevant hereto.

6. Prior to March 23, 2005, the Property was secured by a first priority Deed of Trust in favor of Impac Funding Corp., recorded in the Register's Office for Davidson County, Tennessee on January 15, 2004, at Instrument No. 20040116-0006568 (the "Prior Deed of Trust").

7. As of March of 2005, the holder of the indebtedness secured by the Prior Deed of Trust was Countrywide Home Loans, Inc.

8. In March of 2005, the Debtor refinanced the Prior Deed of Trust indebtedness on the Property, through a loan from Defendant, MLN.

9. The refinancing transaction on the Property was closed with documents signed and dated March 23, 2005, with Archer Land Title, Inc. ("Archer") acting as the closing agent. A true and correct copy of the Settlement Statement for the refinancing transaction, is attached as Exhibit 1 hereto.

10. The Settlement Statement reflects a settlement date of March 23, 2005, and a disbursement date of March 28, 2005.

11. As part of the loan refinancing transaction, the Debtor signed an Adjustable Rate Note ("MLN Note") dated March 23, 2005, in the amount of $88,560.00, payable to MLN. A true and correct copy of the Note is attached as Exhibit 2 hereto.

12. To secure repayment of the MLN Note, on March 23, 2005, the Debtor signed a first priority Deed of Trust encumbering the Property, in favor of MLN ("MLN Deed of Trust"), which was recorded on April 5, 2005. A true and correct copy of the MLN Deed of Trust is attached as Exhibit 3 hereto.

13. In order to establish the priority of the MLN Deed of Trust, a portion of the proceeds from the MLN loan to the Debtor, in the amount of $71,643.36, was paid to Countrywide in satisfaction of the Debtor's obligation to Countrywide which was secured by the Prior Deed of Trust.

14. The $71,643.36 payoff of the Debtor's prior Deed of Trust indebtedness to Countrywide was the payoff calculated as of April 5, 2005, as shown on Countrywide's Payoff Demand Statement, a true and correct copy of which is attached as Exhibit 4 hereto.

15. As required by federal law and regulation, the Debtor was given three (3) business days following the execution of the closing documents to rescind the transaction, which was confirmed in a document entitled Notice of Right to Cancel, also signed by the Debtor on March 23, 2005. A true and correct copy of the Notice of Right to Cancel is attached as Exhibit 5 hereto.

16. Pursuant to MLN's Loan Closing Instructions, the closing agent was required to notify MLN immediately if the Debtor rescinded or canceled the transaction. A true and correct copy of the Loan Closing Instructions is attached as Exhibit 6 hereto.

17. The Debtor did not exercise his right to rescind or cancel the transaction.

18. MLN's loan to the Debtor was funded on March 28, 2005, by a wire transfer of the loan proceeds from MLN to Archer, and by Archer's disbursement of checks on the same date in accordance with the Settlement Statement. A true and correct copy of Archer's Single Ledger Balance Report reflecting the foregoing funding of the loan and disbursement of proceeds on March 28, 2005 is attached as Exhibit 7 hereto.

19. Interest on the MLN Note began to run on March 28, 2005.

20. From March 23, 2005 until it was recorded, the executed MLN Deed of Trust was in the possession of Archer, which was MLN's agent in the transaction.

The trustee contends that because the deed was not recorded within ten days after it became effective between the parties, it is avoidable as a preference. Because perfection occurred within ten days of when the deed took effect between the parties following expiration of the debtor's statutory right of rescission, MLN argues that it was a contemporaneous exchange.

Recently, the court ruled in ***Waldschmidt v. Countrywide Home Loans (In re Watters)***, *Adv. Proc. No. 05-0797A, Docket No. 38 (July 14, 2006)* on the issue of whether, under TILA,[1] the debtor's three-day right has any effect on the ten-day lookback for perfection under 11 U.S.C. § 547(e)(2). This court found that the three day right of rescission is of no consequence to when the transaction took effect between the

---

[1]TILA is an acronym for the federal Truth-in-Lending Act found at Pub.L. No. 90-321, 82 Stat. 146 (codified as amended at 15 U.S.C. § 1601, et seq.).

parties.

MLN argues that this court's ruling in *Watters* did not consider when the transaction "took effect" between the parties, but instead ruled only that the ten-day lookback is not extended by TILA's rescission rights. The trustee argues that the distinction is without a difference in that the court ruled that TILA's rescission remedy is of no consequence whatsoever to when the transaction "took effect" between the parties.

MLN contends that under Tennessee law, a deed of trust does not become effective until "as long as the grantor retains the power to revoke it: To be effective, the delivery must deprive the grantor of the power to recall the deed, and delivery is complete only where the grantor has put the deed beyond his power to revoke or reclaim it." *Hildebrand v. Resource Bancshares Mortgage Group (In re Cohee)*, 178 B.R. 154 (Bankr. M.D. Tenn. 1995) *(quoting In re Estate of Atkinson, Atkinson v. Allied Fence and Improvement Company, Inc.*, 746 S.W.2d 709, 712 (Tenn. App. 1987), *perm. to app. denied* (Tenn. 1988)). According to MLN, the debtor's rescission rights kept the transfer from taking effect until after the three-day period had passed. The delivery of the deed to MLN's agent was only a conditional delivery because the debtor had the right to recall the transaction.

The trustee argues that *Cohee* is distinguishable in that it did not involve rescission rights. In addition, the trustee posits that the debtor's statutory right of rescission presupposes that an effective transaction exists to be rescinded. The trustee relies upon this court's ruling in *Watters*.

The court finds that its earlier decision in *Watters* is good law. Pre- BAPCA 11

4-U.S. Bankruptcy Court, M.D. Tenn.

U.S.C. § 547(e)(2) provides in relevant part as follows:

> (e) (1) For the purposes of this section—
>
>> (A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and
>>
>> (B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.
>
> (2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—
>> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time, except as provided in subsection (c)(3)(B);
>>
>> (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or
>>
>> (C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—
>>> (i) the commencement of the case; or
>>>
>>> (ii) 10 days after such transfer takes effect between the transferor and the transferee.
>
> (3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

The specific issue that MLN contends that this court did not address in ***Watters***, is when the transaction "takes effect" to <u>start</u> the ten-day lookback.[2] As in ***Watters***, the court finds that the TILA rescission rights are of no consequence to the effectiveness of the transaction between the parties.

Because the Bankruptcy Code does not define when a transfer "takes effect," the

---

[2]The court ruled that the ten-day lookback was of no consequence to when the transfer took effect between the parties, but MLN contends that the court's ruling was only in the context of an extension of the lookback, and not a decision of when to <u>begin</u> counting for the lookback. The ***Watters*** decision is currently on appeal.

court must look to Tennessee state law. With respect to land conveyances, this court has stated that :

> In Tennessee, as in other states, land conveyances generally occur in a two step process: execution of a land sale contract followed by execution and delivery of a deed. . . . The actual conveyance of an ownership interest in the property, however, generally occurs by execution and delivery of a deed that satisfies the various formalities required by state statute. 9 Tenn.Jur. Deeds 7 (1993).

*In re Gee*, 166 B.R. 314, 317 (Bankr. M.D. Tenn. 1993); *see also Hildebrand v. Resource Bancshares Mortgage Group (In re Cohee)*, 178 B.R. 154 (Bankr. M.D. Tenn. 1995) *(quoting In re Estate of Atkinson, Atkinson v. Allied Fence and Improvement Company, Inc.*, 746 S.W.2d 709, 712 (Tenn. App. 1987), *perm. to app. denied* (Tenn. 1988)) ("To be effective, the delivery must deprive the grantor of the power to recall the deed, and delivery is complete only where the grantor has put the deed beyond his power to revoke or reclaim it.").

The court finds that the transaction became effective between the parties upon execution based in the very least upon: (1) the enforceability of the Note and Deed upon execution; (2) the TILA's clear statutory language contemplates "undoing" a consummated transaction; and (3) the nature of the remedy of rescission. Tennessee Code Annotated § 66-26-101 provides that unregistered instruments (the list includes deeds) are effective between the parties without registration, "but as to other persons not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided." *See also, C & C Aluminum Builders Supply v. Rynd* 4 S.W.3d 191, 192 (Tenn. Ct. App.,1999). At the execution of the Note and Deed of Trust, either the debtor or MLN could enforce the parties' agreement.

Furthermore, TILA's rescission rights do not depend upon a conditional

agreement, but instead refer to setting aside an effective transaction. The TILA rescission provision provides:

> ### 1635. Right of rescission as to certain transactions
>
> (a) Disclosure of obligor's right to rescind . Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor <u>shall have the right to rescind the transaction</u> until midnight of the third business day following the <u>consummation of the transaction</u> or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635 (emphasis added). The statute contemplates undoing a "consummat[ed]" transaction. The TILA even sets forth the effect of rescission:

> d) Effects of rescission.
>
> (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
>
> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
>
> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.
>
> (4) The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.

***Regulation Z § 226.23(d), 12 C.F.R. § 226.23(d).*** The statute speaks in terms

of "undoing" the transaction rather than some form of conditional transaction where a condition has not been met.

> Finally, Black's Law Dictionary defines rescission as follows:
>
> rescission (ri-sizh-<<schwa>>n), n. 1. A party's unilateral unmaking of a contract for a legally sufficient reason, such as the other party's material breach, or a judgment rescinding the contract; VOIDANCE. • Rescission is generally available as a remedy or defense for a nondefaulting party and is accompanied by restitution of any partial performance, thus restoring the parties to their precontractual positions. -- Also termed avoidance. [Cases: Contracts 249. C.J.S. Contracts §§ 422, 424, 427-428, 456, 465-466, 484.] 2. An agreement by contracting parties to discharge all remaining duties of performance and terminate the contract. -- Also spelled recision; recission. -- Also termed (in sense 2) agreement of rescission; mutual rescission; abandonment.

BLACK'S LAW DICTIONARY (8th ed. on Westlaw, 2006). The purpose of rescission, as an equitable remedy, is to return the parties to the *status quo ante,* and has nothing to do with unmet conditions precedent. **In re Gladys Buckles**, 189 B.R. 752 (Bankr. D. Minn. 1995). The effectiveness of an unregistered deed between the parties, the TILA Regulations contemplating a "consummated" transaction, and the very nature of the rescission remedy all emphasize that an effective transaction exists that must be undone. The transaction is not conditional in nature.

Thus, to the extent that the court did not put to rest the question of whether the TILA's rescission rights affect the starting or extending of 11 U.S.C. § 547(e)(2)'s ten-day lookback, it does so here. The debtor's TILA right of rescission is of no consequence to when to begin counting for purposes of the lookback, and does not extend the lookback as found in **Watters**.

For all of these reasons, the court finds that the trustee should prevail in his preference action against MLN. The court instructs the trustee to prepare an Order not inconsistent with this Memorandum within ten (10) days of its' entry.

It is, THEREFORE, so ordered.
This \_\_\_\_ day of September, 2006.

***THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.***